CHARLES E. WALES *vs.* NEW YORK BOWERY FIRE INSURANCE COMPANY.

June 14, 1887.

**Fire Insurance—Contract made after Destruction of Property—Policy Antedated.**—Where the property has been destroyed by fire before the application for insurance was made and the terms of the contract agreed on, and the insured knew the fact, but did not communicate it to the insurer, who accepted the risk and issued the policy in ignorance of it, the policy is void, and will not cover the loss, although antedated as of a date prior to the destruction of the property.

**Same—Evidence.**—*Held*, under the facts of this case, that May 18th, three days after the loss occurred, must be deemed the date when the application was made, and the terms of the policy agreed on.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial, after a verdict for plaintiff.

*Torrance & Fletcher*, for appellant.

*Lusk & Bunn*, for respondent, cited *May* v. *Western Assur. Co.*, 27 Fed. Rep. 260; *Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117, 123; *McGraw* v. *Germania Fire Ins. Co.*, 54 Mich. 145; *Schomer* v. *Hekla Fire Ins. Co.*, 50 Wis. 575; *Insurance Co.* v. *Folsom*, 18 Wall. 237, 251; *Hallock* v. *Ins. Co.*, 26 N. J. Law, 268, 275; S. C. 27 N. J. Law, 645; Wood on Insurance, § 20.

MITCHELL, J. This action was brought upon a policy of insurance to recover the value of wood destroyed by fire between the hours of 10 A. M. and 1 P. M. of May 15, 1885. The policy bore date May 13, 1885, and purported to insure plaintiff's wood on the north side of the Manitoba railway, at Armstrong's station, for one year from noon of that date. The defence was that the agreement to insure was not entered into until May 18th, three days after the property was destroyed, of which fact plaintiff had knowledge at the time, but withheld the information from the defendant, who made the contract and executed the policy in ignorance of the loss of the property. It appears from the evidence that an application for insurance was made by plaintiff, on either the 14th or 15th of May, to Milligan & Ermentraut, insurance agents in Minneapolis, in the form of a written memorandum left at their office with their clerk, calling for $1,000 insurance on wood, "on north and south sides" of the Manitoba railway at Armstrong's station. It is customary for insurance agents, when they have no company in which to carry a risk, to place it with some other agency, in which case the agency which takes the risk, after writing up the policy, intrusts it to the other agency to deliver, and to collect the premium, and then the two divide the commissions between them.

In the present instance, Milligan & Ermentraut, having no company in which they could carry the risk, on May 15th, took plaintiff's memorandum to the office of Cheney, the agent of defendant, and, not finding him at home, left it with his clerk, with the request to have it written up. The clerk promised that the matter would be attended to, but in fact she had no authority to accept applications, or bind the defendant company. The application was called to Cheney's attention about 4 o'clock in the afternoon of the same day,

but, it being in the "blanket" form, he could not accept the risk, and took no action in the matter. He supposed that Milligan & Ermentraut would call to see about it, but, not having done so, Cheney went to plaintiff's office on May 18th, and "got authority" from him to write up two policies for $1,000 each, one on wood on the north side, and the other on wood on the south side, of the railway track. It was not *until this date* that Cheney assumed the risk for the defendant, or entered it in his register. The policies were dated back to May 13th, the date of the expiration of a policy in a Cleveland company which plaintiff had the year before obtained through Milligan & Ermentraut, who had, however, placed the risk with Cheney, who was at the time agent of that company. The object of this was "to make the insurance continuous." After they were written up, the policies were delivered to Milligan & Ermentraut, who delivered them to plaintiff. Plaintiff learned of the loss of the wood on the afternoon of May 15th, but not until after his application had been left at the office of Milligan & Ermentraut. Neither Cheney nor Milligan & Ermentraut had any knowledge of the loss *until after the policies had been executed and delivered to plaintiff*. Upon learning the facts as to the loss, defendant cancelled the policies, May 30th. The premium was paid by plaintiff to Milligan & Ermentraut June 9th. They say they tendered it to Cheney, but that he refused to accept it, and they, on ascertaining that the policies had been cancelled, tendered it back to plaintiff, but he refused to receive it.

Upon this state of facts we do not see how plaintiff can recover. As in the case of any other contract, to constitute a contract of insurance, the minds of the parties must meet and concur as to terms. Now, prior to May 18th, Cheney had never had any communication with any one regarding this insurance. He was ignorant even of what had passed between plaintiff and Milligan & Ermentraut. He knew nothing about the matter except what was disclosed by the memorandum of application left at his office May 15th. Had he accepted the risk *on the terms of this application,* and written up the policy accordingly, a different question would have been presented. But this he declined to do, because the risk in the form stated in the application was not one which he could take. The terms of the con-

tract were never agreed on until Cheney went to plaintiff's office on the 18th, and these terms were entirely different, both as to the amount and nature of the risk assumed, from those contained in plaintiff's original memorandum. Hence, even under the rule invoked by plaintiff, that, when an application for insurance is accepted, the risk attaches at the date of the application, the risk could not in this case attach, by relation, before the 18th; for that was the time when the terms were agreed on, and must therefore be taken as the date when the application was made, and the contract entered into.

If at that time *both* parties had been ignorant of the loss, it would have been competent for them, by antedating the policy, to have made it retroactive. But in fact the plaintiff then knew that the property had been destroyed, but did not communicate that fact to defendant's agent, who, in ignorance of the loss, accepted the risk, and issued the policy. Under these circumstances, the policy is void, and does not cover the loss.

Order reversed.