# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

Joseph M. Dougherty[1] *vs.* Board of Appeal of
Billerica & others.[2]

No. 95-P-1808.

Middlesex. June 18, 1996. - July 26, 1996.

Present: Dreben, Gillerman, & Laurence, JJ.

*Zoning,* By-law, Variance, Nonconforming use or structure, Multiple dwelling. *Fire.*

A zoning by-law that prohibited the rebuilding of any nonconforming building destroyed or damaged more than sixty-five percent of its reproduction cost at the time of the damage operated to bar the reconstruction, in an area zoned for only single-family residences, of a four-family dwelling that had been entirely destroyed by fire, and the zoning board of appeal was without authority to grant a variance for reconstruction of the building to its nonconforming size and use. [3-4]

---

[1]Margaret B. Ingraham, an additional abutter and plaintiff in the Superior Court, has not joined in this appeal.

[2]Anthony R. Passalaqua and Mary Ann Passalaqua.

CIVIL ACTION commenced in the Superior Court Department on April 5, 1993.

The case was heard by *Robert H. Bohn, Jr.*, J.

*Joseph M. Dougherty*, pro se.

*Paul C. Kilian* for Anthony R. Passalaqua & another.

DREBEN, J. In this action by abutters pursuant to G. L. c. 40A, § 17, appealing a decision of Billerica's board of appeal, a judge of the Superior Court interpreted a by-law of the town to allow reconstruction of a building that had been entirely destroyed by fire. We reverse.

After their four-family residence was destroyed by "a devastating fire," the defendants Anthony R. and Mary Ann Passalaqua applied to the building commissioner for permits to begin reconstruction of the dwelling. Under the applicable zoning by-law, four-family units are no longer permitted in the district in which their building was located,[3] but the Passalaquas claimed the right to reconstruct their building for the same use under § 11C of the by-law. That section provides:

> "Any lawfully non-conforming building or structure destroyed or damaged by fire, flood, lightning, wind or otherwise to the extent of sixty-five percent (65%) or more of its reproduction cost at the time of such damage shall not be rebuilt, repaired, reconstructed nor altered except for a purpose permitted in the zoning district in which such building is located. Any building so effected [*sic*] to the extent of less than 65% of its reproduction cost can be reconstructed within 2 years to its size and use immediately prior to damage or destruction."

The building commissioner, contrary to the contention of the Passalaquas, considered the destruction to be in excess of sixty-five percent, and, as the judge found, "presented the Passalaquas with what she described at trial as a 'referral' slip and directed them to apply to the Zoning Board of Appeal for a variance." The Passalaquas followed her suggestion, and, in support of their petition for a variance, explained that a fire had destroyed their legal, nonconforming four-family building to an extent exceeding 65 percent. The board granted

---

[3]Only single-family residences are permitted.

a variance but did not file any subsidiary findings supporting its conclusion. On the abutters' appeal to the Superior Court, the motion judge[4] remanded the matter to the board for further explanation of its grant and for its opinion as to the necessity of a variance.

The board responded that it had granted the variance based on estimates submitted at the public hearing that showed that it would cost $400,000 to "reproduce" the structure and $200,000 to "reconstruct" it.[5] Based on these figures, the board "voted to grant the variance, whereas the reconstruction cost was less than 65% of reproduction cost. . . ."

The matter was then tried without a jury in the Superior Court. After ruling (correctly) that the board had failed to make the requisite findings to justify the granting of a variance, see *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 331-332 (1993), the trial judge rejected the board's interpretation of the by-law stating: "The Board of Appeal erroneously compares reproduction cost with the cost of constructing an inferior, legally non-conforming building. The cost of the latter is irrelevant to the issue of whether a non-conforming structure may be rebuilt after destruction by fire." The judge, however, interpreted the by-law to reach the same result. Based on the assessed value of the building, $130,200, he found that it had been completely destroyed, that its total value prior to the fire was $130,200, and that this was the monetary value of the damage caused by the fire. Comparing that figure to the figure he found to be the cost of reproducing the building, namely, $414,140, he concluded that the damage to the structure, $130,200, was less than sixty-five percent of its reproduction cost and hence that it could be reconstructed pursuant to § 11C of the zoning by-law without a variance.[6] Neither the language nor the purpose

---

[4]The abutters had filed a motion for summary judgment. The motion judge was not the trial judge.

[5]The structure was built as a Victorian residence in 1862. While it had been modified for use by four families, it still contained many original details (e.g., marble fireplaces, hardwood floors, and decorative moldings), which would be expensive to reproduce.

[6]The abutters argue that the judge could not reach the question of the interpretation of the by-law as the Passalaquas had not appealed the decision of the building inspector, but rather had followed her advice to apply for a variance. We pass that question, but cf. *O'Connor* v. *City Manager of Medford*, 7 Mass. App. Ct. 615, 617-618 (1979).

of the by-law supports his interpretation. The text prohibits reconstruction of a "building . . . destroyed . . . to the extent of sixty-five percent (65%) or more of its reproduction cost *at the time of such damage*" (emphasis supplied). We think the meaning of this provision is that if the damage exceeds sixty-five percent of the reproduction cost of the building as determined immediately prior to the damage (i.e., exceeds sixty-five percent of $414,000) the building cannot be rebuilt. Since the entire building was destroyed, the damage obviously exceeded sixty-five percent of its reproduction costs.

We are supported in our construction by "the general circumstance that zoning regulations tend to provide that an owner of a nonconforming structure is not entitled as of right to rebuild if the structure is destroyed to more than a particular per cent of its value." *Berliner* v. *Feldman*, 363 Mass. 767, 773 (1973). Compare *Blasco* v. *Board of Appeals of Winchendon*, 31 Mass. App. Ct. 32, 39 (1991). See also 4 Ciegler, Rathkopf's Law of Zoning and Planning § 51B.03, at 51B-29 (4th ed. 1995), where the author states:

> "In conformity with the philosophy that the spirit of zoning is to restrict, rather than increase, nonconforming uses and to eliminate such uses as speedily as possible, and in order to discourage the reestablishment of nonconforming uses, the investment value of which has been lost to the owner through accident and through no action on the part of the municipality, it is customary to provide in zoning ordinances a prohibition against the replacement of a nonconforming structure or one employed in a nonconforming use in excess of a specified percentage, this percentage being fixed as equivalent *to substantial destruction.*"

In our view, § 11C of the Billerica zoning by-law is such a customary provision and hence should be construed to prevent rebuilding of a structure that has been entirely destroyed. See, e.g., *Halko* v. *Board of Appeals of Billerica*, 349 Mass. 465, 469 & n.3 (1965). The judgment is reversed, and a new judgment shall be entered annulling the decision of the board of appeal as in excess of its authority.

*So ordered.*